**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**STEVEN VICEDOMINI,**

                                   **Plaintiff,**

        **-against-**

**A.A. LUXURY LIMO INC. and ALBERT**
**ACEVEDO,**

                                   **Defendants.**
------------------------------------------------------------------x

                                     **REPORT AND**
                                   **RECOMMENDATION**

                                   **18-CV-7467 (LDH)**

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

       In this wage-and-hour action filed on December 31, 2018, plaintiff Steven Vicedomini ("plaintiff" or "Vicedomini") sues his former employers, defendants A.A. Luxury Limo Inc. ("AA Luxury") and Albert Acevedo ("Acevedo") (collectively, "defendants"), to recover for deficiencies in the wages he was paid and for related damages.   See generally Complaint (Dec. 31, 2018) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.   Currently pending before this Court, on a referral from the Honorable LaShann DeArcy Hall, is plaintiff's motion for default judgment.   See Notice of Motion for Default Judgment (July 22, 2019) ("Pl. Mot."), DE #15; Order Referring Motion (July 29, 2019) ("7/29/19 Order").

       For the reasons that follow, this Court recommends that default judgment be granted against both defendants, jointly and severally, in the amount of $21,600, consisting of $5,800 in unpaid overtime wages, $5,800 in liquidated damages, $5,000 in statutory penalties for wage notice violations, and $5,000 in statutory penalties for wage statement violations.

## BACKGROUND

### I.     The Complaint's Allegations

Plaintiff's Complaint seeks damages from defendants for their failure to pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 650 *et seq.* ("NYLL"), as well as defendants' failure to provide wage notices and wage statements under the NYLL's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law §§ 195(1)(a), 195(3); see Compl. ¶¶ 1-3.[1]  According to the uncontested Complaint, defendants operated a transportation service, employing approximately twelve employees.  See id. ¶¶ 14-15.  Plaintiff was employed by defendants as a driver/chauffeur, which required that he drive customers, open and close doors, and handle baggage.  See id. ¶ 28.  As alleged in the Complaint, plaintiff worked for defendants in this capacity from in or about March 2016 until in or about September 2016, see id. ¶ 16, during which he states he was misclassified as an independent contractor, rather than an employee, see id. ¶ 53.

Plaintiff alleges that corporate defendant AA Luxury is a New York for-profit corporation owned, controlled, and managed by individual defendant Acevedo, who was in charge of the operations and management of AA Luxury.  See id. ¶¶ 8-9.  The Complaint further states that defendants shared a place of business at 84-03 Cuthberth Road, Kew Gardens, New York, 11415.  See id. ¶ 11.  According to the pleading, defendants hired and fired plaintiff, and plaintiff's employment was supervised, scheduled, controlled, and managed by

---

[1] Plaintiff's Complaint also seeks to recover for "unpaid gratuities/tips."  Compl. ¶ 3.  However, plaintiff states in his memorandum of law in support of the instant motion that plaintiff "will not pursue his claims for unlawful deductions/withholdings of gratuities . . . if this Court enters a default judgment as requested."  Supporting Memorandum of Law (July 22, 2019) ("Pl. Mem.") at 2 n.1, DE #15-1.  Assuming that the District Court adopts this Report and Recommendation that plaintiff's motion for default judgment be granted, plaintiff's claim for gratuities/tips should be deemed withdrawn.

defendants, who tracked, recorded and paid plaintiff wages for his hours of work.   See id. ¶ 12.

Defendants also required that plaintiff adhere to their dress code, as well other rules and

procedures, memorialized in an employment manual given to plaintiff by defendants.   See id.

¶¶ 23-24.   Defendants also furnished plaintiff with the vehicle that plaintiff drove during his

employment, and they required him to take their vehicle with him at the end of his shifts.   See

id. ¶¶ 26, 31.

       As set forth in the Complaint, plaintiff's effective regular rate of pay was approximately

$12.50-$16.66 per hour[2]  throughout the entirety of his employment with defendants.   See id.

¶ 29.   Plaintiff worked 72 or more hours per week for defendants, usually in shifts lasting 12

hours per day, six days per week, although, at times, plaintiff worked 16 to 18 hours per day.

See id. ¶ 30.   Plaintiff estimates that his average weekly wages totaled between $900 and

$1,200.   See Pl. Supp. Decl. ¶ 4.   The Complaint also alleges that plaintiff was entitled to

receive full gratuities/tips paid by customers when paying for their rides, but that defendants

willfully withheld 60 percent of such gratuities/tips and failed to reimburse plaintiff for these

deductions.   See Compl. ¶ 33.   In addition, defendants had a policy of deducting from the

wages of their drivers the cost of parking and traffic tickets and fines, which included a

deduction of at least $50 from the wages of plaintiff for parking tickets.   See id. ¶ 36.

---

[2]  Plaintiff clarifies in his supplemental declaration that he "was paid per trip based on some sort of rate
schedule set by [d]efendants, the specifics of which I do not fully understand or recall."   Plaintiff's
Supplemental Declaration in Further Support of his Motion for Default Judgment (Sept. 8, 2019) ("Pl.
Supp. Decl.") ¶ 5, DE #19-1.   Plaintiff's effective hourly rate range was calculated by dividing the total
number of hours plaintiff worked each week by plaintiff's approximate total weekly wages.   See
Supporting Memorandum of Law (July 22, 2019) ("Pl. Mem.") at 9, DE #15-1 (citing 29 C.F.R.
§778.112 (titled "Day rates and job rates")).

## II.    Procedural History

### A.  The Initiation of the Case and Defendants' Failure to Respond to the Complaint

After plaintiff filed the instant Complaint on December 31, 2018, see generally Compl.,

plaintiff filed multiple affidavits of service with the Court, indicating that each of the two

defendants had been served, see Summons Returned Executed for A.A. Luxury Limo Inc. (Jan.

18, 2019), DE #5; Summons Returned Executed for Albert Acevedo (Jan. 31, 2019), DE #6.   On

February 26, 2019, noting that no Answer had been filed or further action taken in the case, this

Court directed plaintiff to show cause, by March 5, 2019, why the case should not be dismissed

for lack of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure (the

"FRCP").   See Order to Show Cause (Feb. 26, 2019), DE #7.   The following day, plaintiff

sought a certificate of default pursuant to Rule 55(a) of FRCP, see Request for Certificate of

Default (Feb. 27, 2019), DE #8, and on March 5, 2019, the Clerk of the Court entered a notation

of default, see Clerk's Entry of Default (Mar. 5, 2019), DE #9.

After additional docket activity not relevant to the instant application, plaintiff moved for

a default judgment, see generally Pl. Mot.; Supporting Memorandum of Law (July 22, 2019)

("Pl. Mem."), DE #15-1; Plaintiff's Declaration in Support of his Motion for Default Judgment

(July 21, 2019) ("Pl. Decl."), DE #15-2, and Judge DeArcy Hall referred the motion to the

undersigned magistrate judge, see 7/29/19 Order.   On August 23, 2019, this Court issued a

scheduling order requiring plaintiff to file supplemental submissions and directing defendants to

respond.   See Scheduling Order (Aug. 23, 2019), DE #17.   Plaintiff submitted additional

materials on September 8, 2019.   See Letter Supplement – Motion for Default Judgment (Sept.

8, 2019), DE #19; see also Pl. Supp. Decl.   Defendants neither responded to plaintiff's

4

supplemental submissions nor otherwise appeared in this action.

## DISCUSSION

### I.    Default Judgment Standard

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.    See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).    A defendant's default ordinarily constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages.    See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).

This principle is, however, subject to several exceptions and limitations.    First, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10-CV-2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").    Second, the damages amount pleaded by a plaintiff is not deemed to be established by the default; the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty."    Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims

5

Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).    This inquiry may be

accomplished by evaluating and analyzing affidavits and other documentary evidence submitted

by the plaintiff in regards to the extent of damages sought.    See Greathouse v. JHS Sec. Inc.,

784 F.3d 105, 116 (2d Cir. 2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d

Cir. 1989).    It is within a court's discretion to determine whether the plaintiff's burden has been

met, and whether or not to hold an evidentiary hearing.    See Action S.A. v. Marc Rich & Co.

Inc., 951 F.2d 504, 508 (2d Cir. 1991).    The moving party is entitled to all reasonable

inferences from the evidence it offers.    See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653

F.2d at 65.

## II.    Liability

### A.  The Fair Labor Standards Act—Legal Principles

#### 1.  Employer/Employee Relationship

The FLSA mandates that "no employer shall employ any of his employees . . . for a

workweek longer than forty hours unless such employee receives compensation for his

employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate

at which he is employed."    29 U.S.C. § 207(a)(1).    The FLSA defines an "employer" to

include "any person acting directly or indirectly in the interest of an employer in relation to an

employee . . . ."    Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to

work").    An employee may bring suit against his employer where the employee was "engaged

in commerce or in the production of goods for commerce," or where the employer is "an

enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1),

with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

6

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.    Indeed, the regulations promulgated by the United States Department of Labor under the FLSA recognize that there may be joint liability for FLSA violations.    See 29 C.F.R. § 791.2 ("A single individual may stand [as an employee] to two or more employers at the same time under the Fair Labor Standards Act . . . ."); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).    In order to determine whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"    Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

The Second Circuit has identified four factors that a court should address in applying, on a case-by-case basis, the economic realities test when determining employer status: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."    Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotations and citations omitted); see id. at 12 n.1.    Even in the absence of "formal control," an entity or individual may constitute an "employer" if that party had "functional control" of the employee.    See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on

7

other grounds, 811 F.3d 528 (2d Cir. 2016).    In accordance with these principles, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation . . . ."    Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (quotation and citation omitted); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).    Consequently, joint employers, including corporate officers with the "power to control," may be held jointly and severally liable for FLSA violations.    See Moon, 248 F.Supp.2d at 236-37 (citations omitted).

### 2.  Violations of the FLSA

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)).    In order to establish liability under the FLSA for unpaid overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."    Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)).    Employers that violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."    29 U.S.C. § 216(b).    The FLSA contains a two-year statute of limitations for non-willful violations, and, for willful violations, a three-year limitations period from the date that the claim accrued.    See 29 U.S.C. § 255(a).

**B. New York Labor Law—Legal Principles**

The NYLL is quite similar to the FLSA in that it requires employers to pay overtime compensation.    See N.Y. Lab. Law § 650 *et seq.*; Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects.").    Indeed, like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."    See Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citation omitted).

Unlike the FLSA, the NYLL requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, . . . ; the regular pay day . . . ; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."    N.Y. Lab. Law § 195(1)(a).    Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."    N.Y. Lab. Law § 195(3).[3]    One

---

[3] Several NYLL regulations additionally provide for "spread of hours" compensation.    "[S]pread of hours is the length of the interval between the beginning and end of an employee's workday."    N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6; see id. § 142-2.4.    Plaintiff's Complaint does not allege that he was denied a "spread of hours" premium, nor would such relief be appropriate in the instant case. Pursuant to section 142-2.4, and consistent with a 2006 opinion letter issued by the New York State Department of Labor, employees who earn in excess of the minimum wage ordinarily are not entitled to spread-of-hours compensation.    See Singh v. Patel, No. 12-CV-3204 (SJF)(ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013).    As pled, plaintiff's estimated hourly rate exceeded this threshold and plaintiff therefore does not seek spread-of-hours compensation.

9

area in which the NYLL differs from the FLSA is the limitations period, which, under the NYLL, is six years.    See N.Y. Lab. Law §§ 198(3), 663(3).

## C. Application

Having set forth the relevant legal standards under the FLSA and NYLL, the Court now considers whether the factual allegations asserted in plaintiff's Complaint, deemed to be true as a result of defendants' default, are sufficient to warrant a finding of liability against each defendant.    See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

### 1. Plaintiff's Employee Status

Plaintiff has sufficiently pled that he was defendants' employee within the meaning of the FLSA and NYLL.    See generally Compl. ¶¶ 16-27, 58, 64-65, 69-70.    "The overtime provisions of the FLSA and New York Labor Law apply only to individuals who are 'employees.'"    Schwind v. EW & Assocs., Inc., 357 F.Supp.2d 691, 700 (S.D.N.Y. 2005). Courts in this District have found that a plaintiff who "provides information in the complaint as to where he worked, his position[,] and the dates of his employment" has sufficiently alleged employee status in the context of a default judgment motion.    Suggs v. Crosslands Transp., Inc., No. 13-CV-6731 (ARR)(MDG), 2015 WL 1443221, at *3 (E.D.N.Y. March 27, 2015).    Here, because plaintiff avers that he was employed by defendants as a driver/chauffeur from in or around March 2016 to in or around September 2016, tasked with transporting passengers on trips between New York and New Jersey, in a vehicle supplied by defendants, see Compl. ¶¶ 16, 26, 28; Pl. Decl. ¶ 11, he has sufficiently alleged his employee status.

Moreover, the information alleged in plaintiff's Complaint also satisfies the "economic reality" test used by Second Circuit courts to determine whether a person qualifies as an

employee under the FLSA.   Courts applying that test consider relevant factors including: "(1) the degree of control exercised by the employer over the workers[;] (2) the workers' opportunity for profit or loss and his investment in the business[;] (3) the degree of skill and independent initiative required to perform the work[;] (4) the permanence or duration of the working relationship[;] and (5) the extent to which the work is an integral part of the employer's business."   Brock v. Superior Care, Inc. 840 F.2d 1054, 1058-59 (2d Cir. 1988) (citing factors set forth in United States v. Silk, 331 U.S. 704 (1947)).[4]

Plaintiff satisfies multiple *Silk* factors.   As to the first factor, plaintiff states that defendants controlled his employment by setting his rates, work schedule, and work hours, see Compl. ¶ 18, tracking and recording plaintiff's hours, see id. ¶ 19, giving directions and instructions to plaintiff through the use of dispatchers, see id. ¶ 22, requiring plaintiff follow a dress code and other rules and procedures set forth in a manual, see id. ¶¶ 23-24, and providing plaintiff with the vehicle needed to perform his job, see id. ¶ 26.   Second, plaintiff does not plead that he had any opportunity for profits and losses, nor does plaintiff appear to have any investment in defendants' business.   Rather, plaintiff was paid per trip based on some type of rate schedule, see Supp. Aff. ¶ 5, and plaintiff states he was not provided with the full gratuities/tips paid to him by customers or reimbursed for these deductions, see Compl. ¶ 33. Other *Silk* factors also suggest that plaintiff was an employee: plaintiff did not require special skills in his capacity as a chauffeur/driver, and plaintiff's services were an integral part of defendants' transportation business.   Suggs, 2015 WL 1443221, at *4.

---

[4] "None of these factors are dispositive, rather the Court must always consider the totality of the circumstances when determining the 'economic reality' of the employment arrangement between the parties."   Grant v. HER Imports NY, LLC, 15 CV 5100 (DLI)(LB), 2018 WL 3133454, at *3 (E.D.N.Y. Feb. 16, 2018), adopted, 2018 WL 1686103 (E.D.N.Y. Mar. 31, 2018).

Based on the totality of these circumstances, plaintiff has shown that he was defendants' employee, rather than an independent contractor, for the purposes of the FLSA.[5]

## 2. Defendants' Employer Status

Plaintiff has sufficiently alleged that defendants were his employers for the purposes of the FLSA and NYLL.[6]   See generally Compl. ¶¶ 1, 13, 15-16, 28, 39-47.   Plaintiff has established that the corporate defendant owned and operated the transportation service where plaintiff worked.   See generally id.   With respect to defendant Acevedo, plaintiff's Complaint alleges that he "owned/controlled/managed" AA Luxury, and that Acevedo was "in charge of the operations and management of AA Luxury."   Id. ¶ 9.   Plaintiff also states that Acevedo "interviewed and then hired [plaintiff,]" Pl. Decl. ¶ 6, "set [plaintiff's] work duties, [his] work schedule, and rate of pay[,]" id. ¶ 7, and "terminated" plaintiff from his job, see id. ¶ 10.

---

[5] To recover under the NYLL, a plaintiff must show he is an "employee" pursuant to section 190(2) of the NYLL.   See Nuriddinov v. Masada III, Inc., 15 CV 5875 (KAM)(RML), 2017 WL 9253401, at *4 (E.D.N.Y. July 24, 2017) (citing N.Y. Lab. Law § 190(2)), adopted as modified, 2018 WL 1251335 (Mar. 12, 2018).   Under the NYLL, "[t]he standard for differentiating between an independent contractor and an employee . . . [focuses] on the degree of control exercised by the alleged employer rather than the economic reality of the situation."   Id. at *5.   Because plaintiff has pled facts that suggest defendants had a high degree of control over plaintiff, and plaintiff lacked discretion in performing his work, plaintiff also qualifies as an employee under the NYLL.

[6] Plaintiff brings his FLSA claims pursuant to a theory of both "individual" and "enterprise" coverage. See Compl. ¶ 59 ("Plaintiff was engaged in commerce and/or in the production of goods for commerce and/or [d]efendants constituted an enterprise(s) engaged in commerce within the meaning of the FLSA"); id. ¶ 60 ("Defendants transacted commerce and business in excess of $500,000.00 annually or had revenues and/or expenditures in excess of $500,000.00 annually.").   In the context of a motion for default judgment, courts have found similar conclusory but uncontested allegations to be sufficient to satisfy the interstate commerce requirement.   See Reyes v. Art Tek Design, Ltd., 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-cv-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest. Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).   Moreover, in addition to pleading that defendants' gross volume of sales exceeded $500,000 annually, see Compl. ¶ 60, plaintiff has submitted a sworn statement alleging that he regularly carried passengers outside the state of New York, see, e.g., Pl. Decl. ¶ 11; therefore, plaintiff has demonstrated coverage under the FLSA.

Furthermore, despite receiving notice of this lawsuit, Acevedo failed to respond.

The allegations contained in the Complaint thus would appear to be sufficient to find that defendants AA Luxury and Acevedo were plaintiff's joint "employers" under the FLSA and NYLL.   See, e.g., Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case.") (internal quotation marks and citations omitted); Vargas, 2018 WL 1545699, at *5-6; Peralta v. M & O Iron Works, Inc., No. 12-CV-3179 (ARR)(RLM), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

### 3.  Overtime

Plaintiff has sufficiently alleged claims against defendants for unpaid overtime under the FLSA and NYLL.   The Complaint avers that plaintiff regularly worked in excess of forty hours each week[7]  and that defendants did not pay plaintiff the requisite premium for those overtime hours.   See Compl. ¶¶ 29-30, 39-40.   With respect to exemptions under the FLSA, plaintiff argues in his motion for default judgment that defendants' "[f]ailure to plead an affirmative defense, including an exemption affirmative defense[,] results in waiver of the defense."   Pl. Mem. at 3-4 (citing cases).   Second Circuit jurisprudence confirms that a FLSA exemption is an affirmative defense, and a "plaintiff is not required to plead the absence of such a defense." Chen v. Major League Baseball Props., Inc., 798 F.3d 72, 81 (2d Cir. 2015); see Dejesus v. HF Mgmt. Servs., LLC, 726 F. 3d 85, 90 n.7 (2d Cir. 2013) ("We also agree with [the plaintiff] that

---

[7]  As previously noted, plaintiff alleges that he worked at least 72 hours per week, six days per week during the entirety of his employment for defendants, and that he sometimes worked 16- or 18-hour days. See Compl. ¶ 30.

she was not required to plead facts at this stage of the proceedings to support her position that she was a non-exempt employee, that is, one who falls outside of the FLSA's exemptions.").[8] The principle reaffirmed in <u>Chen</u> applies with equal force to exemptions under the NYLL.   <u>See</u> <u>Gayvoronskaya v. Americare, Inc.</u>, 15-CV-6641-DLI-SJB, 2018 WL 4378162, at *3 (E.D.N.Y. Mar. 26, 2018).

### 4.  Wage Theft Prevention Act

Plaintiff sufficiently alleges that defendants failed to provide the wage notice required by section 195(1)(a) of the NYLL.   <u>See</u> Compl. ¶ 37.   Additionally, the Complaint sufficiently alleges that defendants failed to provide plaintiff with proper wage statements, in violation of section 195(3) of the NYLL.   <u>See</u> Compl. ¶ 38.   Therefore, plaintiff has adequately stated claims for violations of the WTPA.   <u>See</u> <u>Vazquez v. 142 Knickerbocker Enter., Corp.</u>, No. 13-CV-06085 (LDH)(PK), 2018 WL 1401798, at *2 (E.D.N.Y. Mar. 26, 2018).

---

[8] In this case, one such potential exemption, which defendants might have asserted had they not defaulted, is the so-called "taxicab exemption" to FLSA's overtime provisions, codified at 29 U.S.C. § 213(b)(17). That provision exempts from the statute's overtime pay requirement "any driver employed by an employer engaged in the business of operating taxicabs."   29 U.S.C. § 213(b)(17).   In <u>Munoz-Gonzalez v. D.L.C. Limousine Services, Inc.</u>, the Second Circuit recently clarified that a "taxicab" for the purposes of the exemption means: (1) a chauffeured passenger vehicle; (2) available for hire by individual members of the general public; (3) that has no fixed schedule, fixed route, or fixed termini."   904 F.3d 208, 210 (2d Cir. 2018).   Plaintiff appears to have driven a chauffeured passenger vehicle during his employment with defendants, thereby satisfying the first part of the definitional requirement.   <u>See</u> Compl. ¶ 28.

 The Complaint does not address the second and third prongs of the "taxicab" definition, except to note that defendants had some unspecified quantity of "recurring and ongoing transportation services to these businesses[.]"   Compl. ¶ 34; <u>see generally</u> <u>Munoz-Gonzalez</u>, 904 F.3d at 217 ("[A] company that receive[s] virtually all its business from recurrent contracts and corporate clients might not be available for hire by individual members of the general public") (internal quotation marks omitted).   Faced with defendants' failure to appear, plaintiff cannot be expected to detail this information without the benefit of discovery from defendants; to hold otherwise would ignore <u>Chen</u> and its progeny and would unfairly reward defendants for their default.

### III.    Damages

Although the Court must accept as true the well-pleaded uncontroverted allegations contained within plaintiff's Complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.    See *supra* pp. 5-6.    Instead, the Court must perform an inquiry to determine the extent of damages to a "reasonable certainty," Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40.

Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."    Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089(KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *2 (S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)).    Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'"    Rodriguez, 2011 WL 4962397, at *2 (quoting Rivera v. Ndola Pharm. Corp., 497 F.Supp.2d 381, 388 (E.D.N.Y. 2006) (citing Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005)).    Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate.    See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

The Court has considered plaintiff's Complaint, as well as plaintiff's declaration and supplemental declaration in support of his motion for default judgment.    In light of defendants' default and failure to respond to any of plaintiff's submissions, plaintiff's evidence on damages

stands uncontroverted.   See Piedra v. Ecua Rest., Inc., 17 CV 3316 (PKC) (CLP), 2018 WL

1136039, at *11 (E.D.N.Y. Jan. 31, 2018), adopted and modified on other grounds, 2018 WL

1135652 (E.D.N.Y. Feb. 28, 2018).   "The Court concludes that plaintiff's declarations and

submissions as to the hours worked, rates of pay received, and other damages are sufficient bases

upon which to calculate and recommend an award of damages."   Id.

### A.  Wage-and-Hour Claims

Before determining damages to recommend for the wage-and-hour claims asserted, the Court

must address threshold issues concerning the number of hours plaintiff worked per week,

plaintiff's hourly rates of pay, and the number of weeks he worked for defendants.

### 1.  Hours Worked Per Week

Plaintiff alleges in his Complaint, and confirms in his initial and supplemental declarations,

that he regularly worked overtime (in excess of forty hours during a workweek), but was paid

only at his regular hourly rate.   See Compl. ¶¶ 29-30, 39-40; Pl. Decl. ¶¶ 13-14; Pl. Supp. Decl.

¶¶ 1-5.   Plaintiff states that he worked "72 or more hours each week for [d]efendants and

sometimes more – at least 12 [hours] a day, [p]laintiff worked up to 16-18 [hours per day]

sometimes, 6 days a week."   Compl. ¶ 30.

### 2.  Regular Hourly Rate of Pay and Overtime Rate

With respect to plaintiff's hourly rate, plaintiff alleges that he was paid an effective

hourly rate of between $12.50-$16.66 per hour.   See id. ¶ 29.   In his supplemental declaration,

plaintiff clarifies how he arrived at this hourly range, stating it "was [calculated] based on

[plaintiff's] recollection and estimate of [his] weekly wages of about $900 to $1200 a week

divided by 72 hours a week."   See Pl. Supp. Decl. ¶ 4.   Plaintiff affirms that he does not know

his exact hourly rate because he no longer has the bank account that he used while working for defendants, see id., and because defendants never provided him with a written wage notice or pay stubs containing his work hours, rates of pay, overtime hours of work, overtime rates, or the overtime wages he earned, see Pl. Decl. ¶¶ 15-16.    Regardless, plaintiff states in his supplemental declaration that he has no objection to the Court using the lower end of plaintiff's weekly salary estimate range ($900 per week).    See Pl. Supp. Decl. ¶ 4.

In describing how he calculated his effective hourly rate, plaintiff relies on the Department of Labor's regulation titled "Day rates and job rates," 29 C.F.R. § 778.112.    See Pl. Mem. at 9.    Although plaintiff was not paid a flat sum for a day's work, this Court concurs that such a calculation is useful in assessing plaintiff's damages based on the limited amount of information known to plaintiff and available to the Court.    For the purposes of the FLSA, when an employee is "paid a flat sum for a day's work[,]" that employee's regular hourly rate is calculated by "totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked."    29 C.R.F. § 778.112; see Calle v. Yoneles Enters., Inc., 16-CV-1008 (NGG), 2017 WL 6942652, at *12 (E.D.N.Y. Oct. 24, 2017), adopted, 2018 WL 401269 (E.D.N.Y. Jan. 11, 2018).    In the instant case, plaintiff's rate of pay for the duration of his employment is calculated as follows:

| Time Period | Weekly Salary | Hours Worked per Week | Hourly Rate of Pay |
|---|---|---|---|
| Mar. 2016 – Sept. 2016 (approx. 29 weeks) | $900 | 72 | $12.50 |

### 3.  Number of Weeks Worked

Plaintiff claims that he was employed by defendants from in or around March 2016 to in or around September 2016.    According to plaintiff's estimates, his employment lasted

approximately 29 weeks.   See Pl. Decl. ¶ 2.   This Court uses that estimate in evaluating the total compensation that plaintiff is owed.[9]

### 4.  Total Overtime Compensation

Defendants are liable to plaintiff for unpaid overtime wages under the FLSA and NYLL. See 29 U.S.C. § 207(a)(1) (mandating that an employee who works in excess of forty hours per week must be paid for the excess hours at a premium overtime rate); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (same).   The overtime rate adds a 50-percent premium to the employee's regularly hourly rate.   See 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . .").

Based upon the hours worked and hourly waged determined above, see supra Part III.A.1-3, the results of the Court's calculations are as follows:

| Per Week | Pay Received Per Week | Hours Worked Per Week | Hourly Rate | Straight Time Pay Due Per Week | OT Hours Per Week | Lawful OT Rate | Lawful OT Pay Due Per Week | Total Pay Due Per Week | Unpaid Wages Owed Per Week |
|---|---|---|---|---|---|---|---|---|---|
| | $900[10] | 72 | $12.50 | $500 | 32 | 18.75 | $600 | $1,100 | $200 |

Because the allegations in plaintiff's Complaint and supplemental submissions state that plaintiff

---

[9] Had plaintiff worked from the very beginning of March until the very end of September, his tenure would have been approximately 30 weeks.

[10] As discussed above, plaintiff's supplemental declaration avers that plaintiff does not object to the Court's use of the lower end of plaintiff's estimated weekly salary range ($900 per week) when determining plaintiff's wage deficiencies.   See Pl. Supp. Decl. ¶ 4.   Accordingly, the Court uses this $900 sum in its calculations.

worked 29 total weeks, the total amount owed to plaintiff by defendants totals $5,800 (29 weeks x $200 per week in unpaid wages owed).

**B.  Liquidated Damages**

Plaintiff requests liquidated damages under both the FLSA and NYLL.   See Compl. ¶ 62; Pl. Mem. at 9-10.   Under the FLSA, an employer who violates the overtime compensation requirements is liable for "an additional equal amount as liquidated damages" unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.   29 U.S.C. §§ 216(b), 260.   As a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.   See Peralta, 2014 WL 988835, at *10.   Therefore, plaintiff is entitled to an award of liquidated damages under the FLSA.

The NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."   N.Y. Lab. Law § 663(1).   Liquidated damages under the NYLL are likewise calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.   See id. Nevertheless, because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."   Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).   Accordingly, plaintiff is not entitled to an award of additional liquidated damages pursuant to the NYLL.

Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiff $5,800 in liquidated damages for unpaid overtime wages.   See Calle, 2017 WL

6942652, at *15; <u>Fermin</u>, 93 F.Supp.3d at 48.

### C. Statutory Damages under the WTPA

Plaintiff also alleges that defendants did not provide plaintiff with the wage notices and wage statements required by the NYLL. <u>See</u> Compl. ¶¶ 37-38. Pursuant to section 198(1-b) of the NYLL, an employee who, within ten business days of his or her first day of employment, was not provided with notice in accordance with section 195(1) of the NYLL, is entitled to statutory damages of $50 per day during which the violation occurred, up to a maximum of $5,000. <u>See</u> N.Y. Lab. Law § 198(1-b). Section 198(1-d) of the NYLL provides that, with respect to the regular wage statements required pursuant to section 195(3), an employee who has not been provided with such a statement is entitled to recover statutory damages of $250 per day, up to a maximum of $5,000. <u>See</u> N.Y. Lab. Law § 198(1-d).

Plaintiff alleges that he never received a proper wage notice or statement. But for the $5,000 statutory maximum, plaintiff's tenure with defendants for six days per week for approximately 29 weeks (174 workdays) would entitle him to recover $8,700 (174 days x $50) for wage notice violations under section 195(1). For violations of section 195(3), plaintiff is entitled to the $5,000 statutory maximum (174 workdays x $250 = $43,500). Therefore, this Court recommends that the District Court award plaintiff a total of $10,000 for defendants' violations of the WTPA wage notice and statement requirements.

### D. Attorneys' Fees, Costs, and Interest

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorney's fees and costs. <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Although the Complaint contains a demand for attorneys' fees and costs as well as prejudgment

interest, see Compl. ¶¶ 77-78, plaintiff's motion for default judgment does not seek such relief, see Pl. Mem. at 11-12.   As such, this Court does not recommend an award of attorneys' fees, costs, or prejudgment interest.

## CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's motion for default judgment be granted, in substantial part, against both named defendants, jointly and severally. Specifically, the Court recommends an award totaling $21,600, representing $5,800 in unpaid overtime wages, $5,800 in liquidated damages, $5,000 in statutory penalties for wage notice violations, and $5,000 in statutory penalties for wage statement violations.

Any objections to the recommendations contained herein must be filed with Judge DeArcy Hall on or before December 23, 2019.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curium).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF court file and to send copies, via Federal Express, to each defendant at the following address:

A.A. Luxury Limo Inc.
84-03 Cuthberth Road
Kew Gardens, NY 11415

Albert Acevedo
84-03 Cuthberth Road
Kew Gardens, NY 11415

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**December 6, 2019**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**
21